Ruffin, C. J.
 

 There is no doubt that the transaction between Hough and Mask, though not strictly a mortgage, in point of form, was substantially so, and is to be treated but as a security in this Court. Neither of those persons raise a question upon the right of Hough to redeem. The only dispute is, whether the plaintiff has that right; and that depends upon the question, whether he has such an assignment of the equity of redemption, as is effectual and sufficient in a Court of Equity, Upon that question the opinion of the Court is against the plaintiff If this had been the case of an ordinary mortgage upon its face, and Hough had made a formal deed of assignment of the equity of redemption to the plaintiff, he might have filed a bill against Mask for redemption, without bringing Hough into the cause, or proving the consideration moving from himself to Hough, as the price of the equity of redemption. For a plaintiff need not make a person a party, who, according to the facts alleged in the bill, has no interest in the' subject, and, although it requires a consideration to raise a trust, yet, after it is well raised, it may be transferred, as against the trustee, voluntarily. To Mask it would be immaterial upon what consideration Hough might have assigned to the plaintiff; and it would therefore be sufficient, in the case supposed, for the plaintiff to prove the assignment, on the hearing.
 
 Thorpe
 
 v.
 
 Ricks,
 
 1 Dev. & Bat. Eq. 613. We do not say, that it would be so in this case, since it is, in form, not an assignment of a clear and admitted equity of redemption, but an assignment of a covenant
 
 *344
 
 or executory agreement from Mask to Hough to convey the land to him upon the payment of a certain sum. Perhaps, therefore, it was indispensable in this case, that the plaintiff should bring in Hough, as well as the mortgagee. But, admitting that it was not, and that the plaintiff might have had a decree upon a bill against Mask alone, yet he has not thought proper to proceed in that way and claim a decree against the mortgagee upon the apparent assignment to him, leaving it to the assignor to assert his right afterwards in a bill of his own, denying the assignment or its legal efficacy. On the contrary, the plaintiff has chosen to proceed against both the mortgagee and mortgagor; and thus he puts, himself, in issue, the assignment in respect of both of those parties, and is, consequently, bound to shew one which is efficacious, and which the'Court will specifically uphold against the assignor, so as to conclude him by a declaration of the assignment in the decree in this suit. Hence it became necessary in the bill to set out not- onlj* the naked fact of the assignment from Hough to Medley, but also that it was made on a valuable consideration. For, although equity does
 
 not
 
 interfere with
 
 the legal
 
 operation of instruments, merely upon the want of consideration, where there is no fraud or imposition, but leaves the parties to the law r it will, yet, not afford relief upon a voluntary executory contract, which passed nothing and created no right at law. Equity in such a case does not act for a mere volunteer, but only for a real purchaser, at a fair price. The plaintiff has endeavored to appear to be such a purchaser. But he entirely fails in the attempt. It is urged for him, that the assignment itself states, that he had fully paid and satisfied Hough for his interest in the land; and that such an acknowledgement is not to be disregarded, but must be deemed sufficient evidence
 
 prima facie
 
 of a valuable consideration. Upon' the same technical reasoning, it might be insisted that the seal imported a consideration
 
 *345
 
 in this Court, because at law it precludes an enquiry as to the consideration. But, in equity, there must be proof of an actual consideration; and, therefore, while a receipt from a party for a certain sum of money is evidence of the payment, these general words, inserted merely as formal parts of an instrument and declaring ■ no particulars, can by no means be admitted as conclusive, that some valuable consideration was actually paid or secured, much less that an adequate consideration was paid dr secured. Those words, respecting the consideration, would, for example, be equally true, whether the assignment was upon a sale, as alleged by the plaintiff, or upon a pledge, as declared by the defendants. The assignment, therefore, cannot supply the place of all other proof of a consideration paid or secured. Indeed, tho plaintiff has not relied on it in the bill for that purpose. On the contrary, the bill professes to set forth the actual consideration, and the plaintiff has gone into evidence, apparently, with the view to the proof of it. The statement of the bill is, that in fact the consideration was a sum due from Hough to the plaintiff on dealings, running through several previous years; the amount of which the plaintiff does not recollect, further than that it was between two and three hundred dollars. -This statement is singularly loose and unsatisfactory. It sets forth no particular sum, either as the amount or the balance of the account, and gives no items; and the only excuse for the omission is, that the plaintiff’s recollection failed him, although the bill was filed in less than a year after the assignment, and although it would have been easy to refer to the settlement of accounts, which it is to be supposed must have been made, if the balance on it was to be paid by the sale of this land. But the very inadequacy of that consideration, taking it at the larger sum, makes it difficult to credit the statement. The value of the land is fixed at $1500 ; and in October 1840, the principal and interest due to Mask, supposing
 
 *346
 
 him not to have been in possession amounted to $540. The value of the equity of redemption was, then, about $960, while the price at which Hough is supposed to have agreed to sell it, was at the utmost only $300 ; which is not one-third of its value. Thus, any presumption of a fair price, to be inferred from the general expressions of the assignment, is confined by the bill to a sum, as the actual price, so totally inadequate as to render it almost incredible, that a contract of sale was made or intended, notwithstanding the form into which the transaction was moulded. It is, indeed possible, that a man may agree to take less than one-third of the value of his land; and, if he did. the Court would not be at liberty, merely for that reason, to set aside his conveyance. But equity would not lean to enforcing, by specific performance, a contract for the sale upon such a consideration, but, rather, leave the case' to its fate at law. At all events, without good proof of the fact of sale at that price, the Court would not incline to the conclusion, that one was intended, especially when there is a fair ground for thinking, that the contract might have been in the nature of a security or for some other purpose. Now, the defendant here, in answer to those allegations in the bill and its interrogations, denies most positively that he contracted to sell the land or his equity of redemption at any price ; and he avers that the bond was not even deposited with the plaintiff as a surety for any debt of his own, but exclusively as a security for the small sum of $S0, which the plaintiff agreed to lend to Mask, but which, as the answers state, after getting the bond, he refused to advance. If this account of the trans - action were less probable in itself than that given in the bill, though it would seem quite the contrary, yet, upon a law of evidence in this Court, it is to be received as true, as far as it is responsive to the bill, unless shaken by other credible evidence. There is no other evidence here, which can have that effect. If a sale had been in
 
 *347
 
 tended, and the mortgagor had, as -is usual, continued in possession, he would have let the plaintiff into the possession, as the owner after his purchase. But nothing of the sort appears. It is not shown that there was any treaty lor a sale and purchase ; that there was any acknowledgement by Hough, even in an unguarded moment, that he had made a sale upon any. terms, or that he ever represented the transaction differently from what it appears in his answer.' The answer is in no way brought into doubt. On the contrary, it is sustained by the evidence which the plaintiff adduces in order to shew Ho'ugh’s indebtedness. The deed of trust recites a debt of
 
 $700,
 
 which is said to be for advances of money at different times to pay [lough’s debts. It is not stated to be due on bond, nor when it was or would be payable. And it looks, therefore, very much as if that sum were , not an ascertained debt, but was inserted in the deed to cover all advances. That, however, need not be insisted on. The plaintiff also produces bonds and judgments against Hough to the amount of $779 67, and proves that he paid for him another sum of $G5 — in all, $844. Of that sum, $538 73 appears to have been due before and at the 15th of September 1840. As there is no evidence of the consideration of the bond for $464 87, which Hough gave the plaintiff March 28th, 1840, it might, if necessary, be proper to enquire, whether that bond was not given on a settlement for the advances ser cured by the deed of trust. But, for purposes now in view, it may be assumed, that both of the debts of $700 and $464 87 were subsisting. Still, Hough would not have been indebted to the plaintiff in $300, or any other sum on the 7th of October, 1840. For, on. the 15th of September 1840, the land that had been mortgaged for the debt of $700, was sold under a
 
 fieri facias
 
 at the instance of another creditor, subject to that mortgage: in other words, the equity of redemption was sold, and was purchased by the plaintiff at the price of $1,200. That,
 
 *348
 
 of course, extinguished the mortgage debt — the land being worth, probably, $2,000, and the plaintiff taking it, liable to his own debt. Of the price bid by him, the plaintiff paid the sheriff only $66; and he was to account with Hough for the residue, namely, $1,134. At that time, besides tho mortgage debt of $700, the plaintiff’s demands against Hough amounted only to $53S 73 and some interest, and thus left a balance of about $595 27 due to Hough. No doubt, it was on account of that balance due from him, that the plaintiff made the subsequent payments and advances for and to Hough on the 13th of October. 1840, and in the years 1841 and 1842, namely, the sums of $203 64 and $102 30 — making together $305 94. But, after deducting that sum from the before-mentioned balance of $595 '27, there Avould remain due to Hough from the plaintiff the sum of $289 33. It appears, therefore, that, at the time tho plaintiff jjro-., cured the assignment of this bond from Hough, instead of the latter owing the former two or three hundred dollars, the balance was on the other side ; and that the plaintiff then owed a balance of $595 27, and, after deducting intermediate payments, he still owes Hough $289 33. It is then impossible, that the plaintiff could become the purchaser of the land in the manner and upon the consideration alleged by him. On the contrary, the statement of the bill as to ^he price, singular and suspicious as it is, is not sustained, but is disproved by the evidence, which, as far as it goes, leads one to credit the answer.
 

 Consequently, it must be declared, that the plaintiff has failed to establish that be purchased the equity of redemption in the premises from Hough at the price of $200, or $300, or at any other price paid or secured, or that Hough assigned to him the bond of Mask, which is mentioned in the pleadings, for any valuable consideration ; and therefore, that the plaintiff has not entitled himself to a decree in this cause for the redemp
 
 *349
 
 tion of the premises; and the bill must be dismissed with costs.
 

 Per Curiam.
 

 Bill dismissed with costs.